UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

**NELSON FERNANDEZ**,

Plaintiff,

vs.

**UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD.,**
**d/b/a UNIVERSAL ORLANDO RESORT,**
**a Florida limited partnership,**

Defendant.
_______________________________________________/

**COMPLAINT**

Plaintiff NELSON FERNANDEZ, through undersigned counsel, sues Defendant UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD., d/b/a UNIVERSAL ORLANDO RESORT, a Florida limited partnership, and alleges as follows:

1. This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3. Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4. Plaintiff NELSON FERNANDEZ is a resident of Polk County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Plaintiff resides at 5241 Green Belt Drive, Haines City, Florida. Although Plaintiff resides in Polk County, he often travels with his wife to the Orlando, Winter Park, and surrounding areas and intends to visit these areas again in November or December 2026.

5. Plaintiff is and at all relevant times has been a visually and physically disabled person who has been medically diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS"). As a result of his condition, Plaintiff is paralyzed in approximately 80% to 90% of his body as a whole and only has very limited use of his left hand. Further because of his condition, Plaintiff has developed optic neuritis, with complete blindness in one eye and very limited vision in the other eye. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff also is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6. Because he is visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word

'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017).

7. Defendant is a Florida limited partnership authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls amusement parks that are open to public, including the amusement park Plaintiff intended to patronize in the near future, and as early as November or December 2026, located at 6000 Universal Boulevard, Orlando, Florida, which is approximately 30 miles driving distance from where Plaintiff resides.

8. Plaintiff's visual disability limits him in the performance of major life activities, including seeing, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend company websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls amusement parks under the brand name

"Universal Orlando Resort". Each "Universal Orlando Resort" amusement park is open to the public. As the owner, operator, and/or controller of these amusement parks, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls, "a park, zoo, amusement park, or other place of recreation," per 42 U.S.C. §12181(7)(I) and 28 C.F.R. §36.104(9).

11. Because Defendant is an amusement park open to the public, each of its physical amusement parks is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §§12182 and 12181(7)(I), and the ADA's implementing regulations, 28 C.F.R. Part 36.

12. Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.universalorlando.com/web/en/us (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical amusement parks. Defendant also sells to the public its amusement park tickets and passes through the Website, which acts as a critical point of sale for Defendant's tickets and passes that are also sold in, from, and through Defendant's physical amusement parks. In addition, the Website allows users to book and purchase hotel room accommodation packages for use at physical hotels affiliated with, and located on or near, Defendant's physical amusement parks, purchase merchandise that is also available for purchase at the physical stores

affiliated with, and or located on or near, Defendant's physical amusement parks, submit an electronic contact form to get in contact with and/or be contacted by Defendant's physical amusement parks, purchase gift cards for use onsite at and throughout Defendant's physical amusement parks, and sign up for an emailer/account to receive exclusive offers, benefits, invitations, promotions, and discounts for use online and in the physical amusement parks.

13. The Website also services Defendant's physical amusement parks by providing information on available tickets, passes, merchandise, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14. Because the Website allows the public to locate and learn about Defendant's physical amusement parks, purchase Defendant's amusement park tickets and passes that are also available for purchase in, from, and through the physical amusement parks, book and purchase hotel room accommodation packages for use at physical hotels affiliated with, and located on or near, Defendant's physical amusement parks, purchase merchandise that is also available for purchase at the physical stores affiliated with, and or located on or near, Defendant's physical amusement parks, submit an electronic contact form to get in contact with and/or be contacted by Defendant's physical amusement parks, purchase gift cards for use onsite at and throughout Defendant's physical amusement parks, and sign up for an

emailer/account to receive exclusive offers, benefits, invitations, promotions, and discounts for use online and in the physical amusement parks, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical amusement parks, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses.

15. Because the public can purchase Defendant's amusement park tickets and passes through the Website that are also offered for sale in, from, and through Defendant's physical amusement parks, book and purchase hotel room accommodation packages for use at physical hotels affiliated with, and located on or near, Defendant's physical amusement parks, purchase merchandise that is also available for purchase at the physical stores affiliated with, and or located on or near, Defendant's physical amusement parks, submit an electronic contact form to get in contact with and/or be contacted by Defendant's physical amusement parks, purchase gift cards for use onsite at and throughout Defendant's physical amusement parks, and sign up for an emailer/account to receive exclusive offers, benefits, invitations, promotions, and discounts for use online and in the physical amusement

parks, the Website is an extension of, and gateway to the physical amusement parks, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(I). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar amusement parks that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical amusement parks.

16. At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar amusement parks that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical amusement parks. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17. Because he is both visually and physically disabled, Plaintiff does not drive. As a result, he relies on family members, friends, public transportation, and

ride services to travel within and throughout the central Florida region, including within and throughout both Polk and Orange Counties, to attend medical appointments, attend theme/amusement parks and other leisure establishments, shop at retail establishments, and dine in restaurants. He also heavily relies on the availability of retailer, restaurant, and other establishments' websites to enable him to pre-shop, order, and purchase company products, conduct retail and restaurant transactions, and access other goods and services that are also available in, from, and through the brick-and-mortar locations of those businesses.

18. Plaintiff, who has been and intends to be a customer of Defendant in the near future, and as early as November or December 2026, visited Defendant's Website on August 28, 2026, with the intent to pre-shop and make a purchase of Defendant's tickets and passes also available for purchase in, from, and through its physical Orlando-based amusement parks. Plaintiff also plans to return to and use Defendant's Website in November and December 2026, and in the months thereafter, for the purposes of reviewing and purchasing Defendant's tickets and passes also available for purchase in, from, and through its physical amusement parks. Plaintiff also plans to visit Defendant's physical amusement parks in as early as November or December 2026, at which time he will be driven to the location by a family member, friend, public transportation, or ride service in order to attend and avail himself of the various leisure opportunities available in and throughout the

physical amusement parks. Indeed, Plaintiff regularly travels in the vicinity of Defendant's physical amusement parks as he and his wife have frequently (more than five times) visited, shopped, and dined at other establishments, malls, stores, and restaurants in the nearby Orlando area. Plaintiff thus would immediately return to both the Website and Defendant's physical amusement parks but for the accessibility barriers described hereinbelow. Plaintiff's intent to return to both the Website and the physical amusement parks, and to patronize the physical amusement parks, thus is concrete, specific, and ongoing, and Defendant's failure to maintain an accessible Website creates a real and immediate threat of future discrimination to Plaintiff and other blind and/or visually disabled persons, such as he, who use screen reader software to access company websites and communicate with physical company locations.

19. Plaintiff also intends to continue to monitor the Website in November and December 2026, as well as in the following months, in his capacity as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

20. The opportunity to shop and pre-shop Defendant's tickets and passes, book and purchase hotel room accommodation packages for use at physical hotels affiliated with, and located on or near, Defendant's physical amusement parks, purchase merchandise that is also available for purchase at the physical stores

affiliated with, and or located on or near, Defendant's physical amusement parks, submit an electronic contact form to get in contact with and/or be contacted by Defendant’s physical amusement parks, purchase gift cards for use onsite at and throughout Defendant's physical amusement parks, and sign up for an emailer/account to receive exclusive offers, benefits, invitations, promotions, and discounts for use online and in the physical amusement parks from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a visually and physically disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and/or visually disabled individuals using screen reader software.

21. Like many consumers, Plaintiff accesses a number of websites at a time to help plan his leisure outings, which include amusement parks, and to compare ticket and pass offerings, goods, services, prices, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare goods, features, services, discounts, promotions, and prices.

22. Beginning in August 2026, Plaintiff attempted on a number of occasions to utilize the Website to browse through the tickets, passes, and other online offers to educate himself as to the tickets, passes, services, sales, discounts, and promotions being offered, learn about the brick-and-mortar amusement parks,

check park hours, and check amusement park ticket and pass pricing with the intent to make a purchase through the Website or in, from, and through the physical Orlando-based amusement parks. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and/or visually disabled persons, such as he, who use screen reader software to access and navigate company websites.

23. Plaintiff utilizes available screen reader software that allows individuals who are blind and/or visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and/or visually disabled individuals using keyboards and available screen reader software. These access barriers, which are severe and pervasive, specifically prevented Plaintiff from fully and effectively accessing and navigating the Website and, as confirmed by Plaintiff's expert (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA), include the following:

a) Level A Guideline 2.1.1 – Keyboard (website must be accessible by keyboard only (no mouse or other pointing device)) – Three expandable menu buttons at the top of the navigation region that are inoperable. Each button is announced as a menu button that opens a list. When one of these buttons is activated, the associated list opens and "dialog" is announced, followed by the first option displayed in the list. At this point, pressing the tab key closes the list and moves

focus to the next navigation element. Alternatively, pressing the down arrow key does not navigate through the list and results only in the same first option being repeatedly announced. As a result, the screen reader user is unable to navigate through the lists or select any other available options. (*Note: There are no accessibility options available on the Website.)

b) Level A Guideline 2.4.3 – Focus Order (website provides focus in a logical order that preserves meaning and operability) – Focus that becomes trapped within expanded navigation submenus. When a submenu gets expanded, the screen reader user can tab through the available submenu links as expected. However, once the last link is reached, the next tab key press returns focus to the first link, which causes focus to continuously loop through the submenu. Focus does not move out of the submenu to the next navigation element nor is a mechanism provided for the screen reader user to close the submenu and continue navigating the page. The screen reader user must instead activate one of the submenu links and navigate to another page to exit the submenu.

c) Level A Guideline 2.4.3 – Focus Order (2) (website provides focus in a logical order that preserves meaning and operability) – Disordered focus shifting. For example, when a vacation package gets added to the cart and the "View Cart" button is selected, a dialog gets displayed where users are asked to select the first day of their park ticket. Tab focus then moves into the calendar and through the dates

of the selected vacation period. Once a date button is selected, the button turns blue to indicate the selection and the "Continue" button at the bottom of the dialog becomes activated, but no confirmation of the selection is announced by the screen reader software. As the screen reader user continues tabbing, focus continues to loop through the dates of the vacation period and does not move out of the calendar. This occurs when tabbing both forward and backward, thus preventing the screen reader user from reaching the "Cancel" or "Continue" buttons and proceeding with their purchase. (*Note: If the "Next Step" button is selected instead of the "View Cart" button, the screen reader user is taken to the "Tickets" step, where they can select a ticket option. However, the same blocking issue is encountered by them immediately afterward, thus preventing them from completing their purchase through either path.)

d) Level A Guideline 2.4.3 – Focus Order (3) (website provides focus in a logical order that preserves meaning and operability) – Disordered focus shifting. For example, after a vacation package is added to the cart and the "Next Step" button is selected, the page content updates to the "Tickets" step. However, focus remains on the "Next Step" button and with the next tab key press, focus moves directly to the footer, thus skipping over all the newly displayed content. The screen reader user must then tab through the footer, back to the address bar, through the navigation region, and onto the main page again before they can access the content displayed for the next step.

e) Level A Guideline 2.4.3 – Focus Order (4) (website provides focus in a logical order that preserves meaning and operability) – On the "Shop" site, a "Complete Your Order" section that is presented to the screen reader user as out of sequence; this is encountered by the user on the checkout page. Additionally, the screen reader user encounters the final "Pay Now" button and all footer links before focus reaches the additional products displayed within this section. If the "Add Discount" shortcut is activated, focus moves to the "Discount code" field and then to the "Back to Finalize Order" button before reaching the "Complete Your Order" section. As a result, this section is presented after content and controls that signal to the screen reader user that they have reached the end of the checkout process, thus making it likely that they will miss out on it.

f) Level A Guideline 4.1.2 – Name, Role, Value (All interactive elements are labeled with a descriptive name, role, and current value) – Throughout the Website, links associated with events and offers that are not clearly identified. For example, a carousel on the homepage contains 13 different events and offers with associated links that are announced using generic labels such as "get details link" and "buy now link", which provide no information on the corresponding event or offer. The screen reader user must navigate backward using the up-arrow key from each link to access the associated information, which is then announced in reverse order. Another carousel further down the homepage contains 11 items for which only

the associated "Explore" links receive tab focus, thus resulting in 11 consecutive links being announced only as "explore link," which provides no indication of what each link is associated with. This behavior was observed on multiple other pages throughout the Website.

g) Level A Guideline 4.1.2 – Name, Role, Value (2) (All interactive elements are labeled with a descriptive name, role, and current value) – Room types associated with each set of controls that are never identified for the screen reader user. As the user tabs through each available room option, focus moves to the image gallery buttons, the "View Room Details" button, and the "Select" button without the associated room type or price being announced to them. As a result, the screen reader user must navigate backward using the up-arrow key from the "View Room Details" or "Select" buttons to hear the corresponding room type and price before activating the button. Otherwise, the user must activate the button without knowing which room option it is associated with.

h) Level A Guideline 4.1.2 – Name, Role, Value (3) (All interactive elements are labeled with a descriptive name, role, and current value) – On the checkout page, form fields that are unlabeled. When the required "First Name", "Last Name", and "Email Address" fields receive focus, each is announced only as "edit required", thus providing no indication of what information should be entered. Additionally, the two required checkboxes are announced only as "checkbox not

checked required" but without their associated labels. The visible labels for these fields and checkboxes cannot be accessed separately using arrow key navigation. As a result, the screen reader user is unable to determine the purpose of the fields and checkboxes required to complete the checkout process.

i) Level AA Guideline 1.4.5 – Images of Text (website doesn't use images of text (screen readers are unable to read)) – Inaccessible images of text. For example, the image containing details about "Halloween Horror Nights" is announced only as "dialog" when reached using arrow key navigation; none of the information displayed within the image is announced to the screen reader user.

24. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

25. The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same leisure outing experience, with the same access to the tickets, passes, goods, sales, services,

discounts, and promotions, as provided at the Website and in the physical amusement parks as the non-visually disabled public.

26. Plaintiff desires and intends in the near future, and as early as November or December 2026, once the Website's access barriers are removed or remedied, to patronize Defendant's physical Orlando-based amusement parks and to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to fully and equally access, navigate, and communicate with Defendant through the Website due to his visual disability and the Website's access barriers. Thus, Plaintiff and others who are blind and/or with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27. Because of the nexus between Defendant's physical amusement parks and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical amusement parks for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar amusement parks that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services,

privileges, and advantages as afforded the non-visually disabled public both online and in the physical amusement parks, which are places of public accommodation subject to the requirements of the ADA.

28. On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29. On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of the Website by individuals with disabilities.

30. On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33. On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34. On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35. Defendant has not created and instituted a useful and effective Specialized Customer Assistance line, service, or email contact mode for customer assistance for the visually disabled.

36. Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

38. Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's amusement park tickets and passes offered on the Website and in the physical amusement parks from their homes.

39. Defendant thus has not provided full and equal access to, and enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations provided by and through the Website and the physical amusement parks in contravention of the ADA.

40. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities, such as Plaintiff.

41. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites, such as the Website at issue in the instant action.

42. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website that prevent individuals with visual disabilities from the means to comprehend information presented therein.

43. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44. The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

45. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from

Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

46. Notice to Defendant is not required because of Defendant's failure to cure the violations.

47. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

49. Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50. Pursuant to 42 U.S.C. §12181(7)(I), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

51. Pursuant to 42 U.S.C. §12181(7)(I), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical amusement parks, purchase Defendant's amusement park tickets and passes also available for purchase in, from, and through the physical amusement parks, book and purchase hotel room accommodation packages for use at physical hotels affiliated with, and located on or near, Defendant's physical amusement parks, purchase merchandise that is also available for purchase at the physical stores affiliated with, and or located on or near, Defendant's physical

amusement parks, submit an electronic contact form to get in contact with and/or be contacted by Defendant's physical amusement parks, purchase gift cards for use onsite at and throughout Defendant's physical amusement parks, and sign up for an emailer/account to receive exclusive offers, benefits, invitations, promotions, and discounts for use online and in the physical amusement parks. Further, the Website serves to augment Defendant's physical amusement parks by providing the public information about the amusement parks and by educating the public as to Defendant's available tickets and passes sold through the Website and in, from, and through the physical amusement parks.

52. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can

demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in the physical amusement parks in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

57. The Website was visited by Plaintiff's expert in September 2026, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite being

a defendant in prior ADA website accessibility lawsuits, one or more of which resulted in a confidential settlement agreement that obligated Defendant to fully remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and/or visually disabled persons, such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website a useful and effective "accessibility" notice, statement, or policy to provide blind and/or visually disabled persons, such as Plaintiff, with a viable alternative means to fully and equally access and navigate the Website. Defendant thus has failed to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

58. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59. Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

60. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and/or visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

61. Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals with visual disabilities, such as Plaintiff, who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

62. The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

63. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

64. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: “In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability,” 28 C.F.R. §36.303(c)(1)(ii).

65. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

66. As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

67. As a direct and proximate result of Defendant’s failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar amusement parks, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant’s Website and its physical amusement parks.

68. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

69. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to, and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical amusement parks through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to, and usable by blind and/or visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of locating Defendant's physical amusement parks and becoming informed of, and purchasing Defendant's tickets and passes, and during

that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical amusement parks.

70. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts,

---

[1] or similar.

policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final

content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K. An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

L. Such other and further relief as the Court deems just and equitable.

DATED: October 22, 2026.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By: *s/ Roderick V. Hannah*
RODERICK V. HANNAH
Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
6355 N.W. 36th Street, Suite 307
Virginia Gardens, FL 33166
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com

By: *s/ Pelayo M. Duran*
PELAYO M. DURAN
Fla. Bar No. 0146595